Okay thank you. May it please the court? Um this is William Baker. On behalf of the petitioner Sorida I should say that I spoke with her last night and because of some logistical problems with my office she's not able to attend a hearing today but of course she's obviously concerned about this important life-changing case in her life and she's very concerned about what's going to happen. So this case depends upon whether the court should have granted her asylum withholding or convention against torture case. The court did make the mistake in that there was no substantial evidence to support the denial of her asylum claims. In this case she was targeted because of her race and she was persecuted um wait just a minute um perhaps I misunderstand the facts but my understanding is that she's an indigenous woman but the person who attempted to rape her is also an indigenous person. There was no actual rape there was an attempted rape which is horrific. I grant you that but do any case law that suggests that attempted rape is torture for purposes of the asylum statute or withholding? I'm not I'm not as I sit here aware of any particular case your honor but the attempted rape combined with the repeated death threats and essentially more attempted rapes on threat of death would constitute persecution and would constitute in my opinion torture. But I think the government opposition seems to dwell upon the fact that the the villain here the the the rapist guy and murderer didn't specify why he was targeting his victim. Well he certainly certainly didn't do it because she was an indigenous woman he was an indigenous man right? No I think it's quite obvious he did it because she was an indigenous woman in that he knew that he could do what he wants and get away with it he could he could he didn't he did not get away with it. She she then went uh to I assume where she could have reported to the police she called her husband in the United States who told her to leave right? Uh yes the husband seemed to blame her as well which again goes back. But the reality is when when this atrocity occurred which fortunately was not consummated she didn't just sit around she went to the phone walked to wherever it was talked to her husband he said leave she left. Yes but that didn't didn't stop um the we'll call me attempted rapist from preying upon this poor woman again and I I contend again that he did that specifically specifically because he knows that he can do this with impurity even though he's indigenous as well there's no police there she said there were like two incidents of police contact in 26 years which is incredible she said the indigenous people are worth nothing or words to those effect in and again the villain uh the predator the rapist the torturer the murderer they're not going to articulate their motivation for their deprivations they're not going to say I'm doing this because you're an indigenous person they do it. Let me ask you this uh when she went to the place she called her husband that's the same place where the police were located right? I believe so. And did she contact the police did she say anything to them while she was there? I I don't believe the record indicates that she did. So I think you have the burden to show first of all I don't know you have a particular social group but let's say arguably that you do uh your client has the burden to show that the attempted rape occurred expressly because of her condoned or acquiesced in this she did not contact the police even though she was in the place where they were located so what does she rely upon the country report is that what is that her evidence? Well the the country reports her testimony that um essentially again indigenous people are nothing they're worthless the government doesn't care about them uh and and there's some other articles there about how indigenous people are discriminated against in Guatemala and and apparently she did not go to the police for the very same reasons she know it's useless they're not going to help her they're not going to go over to the village um and and we get back to our villain the attempted rapist and I think he knows that again there's there's 400 years of oppression against these this is all supposition though is it not as you know counsel I'm sure you have a lot of expertise in immigration we get hundreds of these cases from Mexico where people claim that various and plunder things happen and the statement is well we don't go to the police because the police are corrupt uh unless there's specific evidence that shows their inattention we don't credit those we just don't credit them what's the difference here? Well the the difference is this this is an indigenous woman living in a remote indigenous village I think she said three hours from the police station where the police have been there twice in in 26 years and the judge went to the place where they were and she spoke to her husband all she would have had to do is to go to the police and tell him what happened now if they don't do anything after that then she's got something else but she didn't even make a report uh that's correct but again she knows it's futile um to make the report and I think that that's her statement uh but she bears the burden of proof does she not? Yes she does and and my contention is she met her burden of proof given all these extraordinary facts and the fact the judge found her credible and and that's also supported by the country report showing the discrimination and poor treatment of indigenous people. Did the judge find her credible with respect to the attempted rape or what she said about what the police would or would not do? I'm not sure he broke it down he just he said he found her generally credible so I think her testimony which is evidence and that's the only evidence we have before the court uh on that issue was that I mean the police don't care about indigenous people uh and then that's apparently why the rapist was able to do this with with seeming impunity because he knows that as well it's a known fact uh they're not going to help you got 46 seconds left to get to the two minutes you're going to save any of your time? Uh I'll go ahead and stop and turn them I up do you make this possible? Okay. So this is Mr. Price right? Yes your honor and my video is still off I requested the AV operator to turn it on but it's still off. So oh there you are good morning your honor thank you I would like to a a different uh reading of the record with respect to the existence of the police there are no police in that village the record shows at AR 000148 that there the police are a two hour walk away. No I don't think anybody said they were in the village what I asked about was she she she walked to call her husband and the place where she called her husband is a place where the police are right? I believe that is correct. Okay so that's the problem. Okay I I then in that regard I would echo what Mr. Baker said about the police and I wanted to point out in my argument that she did suffer past persecution and I cited a couple in what way I I ask your opposing counsel whether there are any cases that say that attempted rape in the fashion we're talking about here constitutes torture under either cash or withholding or asylum. Yes I I cited them in the reply brief they are a case where your honor wrote a concurring opinion that is Duran Rodriguez V. Barr 918 F 3rd 1025 and there's another case Perez V. Lynch 674 F appendix 627 628-29 2017. That said that attempted rape is torture? It says that attempted rape accompanied by death threats in the circumstances that we have here is past persecution. So that's what I was going to argue I would like to reserve the rest of the time your honor. Thank you. Okay well you you know you and Mr. Baker got between you about 40 seconds so you'll proceed when the other side finished then. Okay let's hear then from Ms. Baird for the government. Good morning may it please the court Sarah Baird on behalf of the respondent. The court should deny the petition for review because the record doesn't compel the conclusion that petitioner met her burden of showing that the harm she experienced was on account of or motivated by a protected ground her indigenous ethnicity or her particular social group which kind of coincides with the women. So one of the elements for an asylum or withholding claim is this nexus this motive element and she has to show by either direct or circumstantial evidence that there is such a motive and here she testified that she did not know why this her mother's ex-boyfriend I'll call him Garcia his last name she testified she did not know why Garcia targeted her and she also there's no evidence that he made any comments whatsoever about her indigenous ethnicity he himself was indigenous he never mentioned her being indigenous and this court has held in other contexts that comments racial slurs could be direct evidence of motive but here we don't have that direct evidence there's also no circumstantial evidence of him targeting her being motivated by her indigenous ethnicity because everyone in their village was indigenous so that doesn't explain why he singled her out because that didn't make her different from everyone else it was reasonable then for the agency to infer that he was motivated by his desire to commit the crime which is awful the immigration judge called it a sick desire but um in this circumstance with opportunistic crime it's a reasonable inference that the motive is to commit the crime and since there's no direct or circumstantial evidence to compel the conclusion that her status as an indigenous woman is what motivated him this court should affirm this court should affirm the decision um judge smith you were asking about whether the harm rose to the level of past or torture and i think that um i i would argue that that is not exactly on point in this case because that's a separate element um so perhaps an attempted rape um amicus pointed to this case that he had cited in his brief duran rodriguez and perhaps death threats and an attempted rape in other circumstances could rise to the level of persecution here the agency didn't even decide that issue that's a separate element the agency decided that she didn't show it was motivated by a protected ground so in addition to showing harm that rises to the level of persecution she also has to show that element of the motive and that's where her claim um didn't didn't meet her burden of proof and that's the basis on which the agency denied asylum and withholding of removal and then for the cat protection the agency denied that on the basis of her not showing that she would be tortured with government acquiescence which she didn't show she there's no government involvement whatsoever and she didn't even report this to the police about uh uh the uh that aspect of it they seem to rely on the country report a failure as they feel of the bia to speak about the country report uh they clearly they did refer to that in connection with the asylum review uh is there any requirement that the bia expressly referred to the country report in more than one of the contexts that it examines uh in connection with the case no there's no requirement i mean certainly the bia should be reviewing all of the evidence in the record and there is a presumption that they do that um but there's no requirement that they mention that in every as they go through each and every um part of their decision where where's the case that says or where is the regulation that says there's a presumption that they review all the evidence if for example they've reviewed it in uh in one of the other contexts say asylum is there a presumption that if the bia examines the country reporting connection with asylum that it has also reviewed the country report with respect to the cat plane so with regard to the case um i don't know that off the top of my head and i don't have it in front of me i can get that to you if you would like please let me know i believe that um it's it's sort of case law just saying that um unless there's something that the board just clearly missed we assume we give them the benefit of the doubt as a government actor that they reviewed the whole record and where that's what the case says that you're talking about right if i'm remembering correctly yes why don't you why don't you send us a 28 day letter in opposing counsel with that case or cases okay but in this case i think that um here the government's position as to the cat claim is that the board based that primarily and the immigration judge based that primarily on her not showing the government acquiescence piece um and having not reported the incident to the police or assault police protection whatsoever um the you know the country report shows some good and some bad with regard to um the guatemalan government's efforts to protect indigenous people certainly there's the long history of marginalization and discrimination um however there's also some evidence that the trying to remedy that trying to better protect their citizens including the indigenous people i believe i cited in my brief one part of the um country report that they've located several police academies in predominantly indigenous communities in hopes of training up more indigenous individuals as police officers so there have been some efforts on the part of the willfully blind to this particular individual targeting her nor that the government would actually participate in any way in her torture um what is what is the law with respect to the specificity that is required in connection with the cat plane to the degree of relying on the country report she did not report the incident to the police so we're looking at more general matters the country report says what it says but of course it says nothing about her says nothing about her village says nothing about her particular area to the best of my recollection that's right uh is that sufficient to meet the requirement uh of government uh complicity or acquiescence under cap no we would argue that under the circumstances you just described the just showing that um that the government does not always um catch every criminal or that there's you know potentially funding issues or other problems that the government is facing isn't enough to show meet her burden so she would need something showing that she individually faces this particularized likelihood of torture um for a cat and this court has required that particularized showing um and and she simply didn't make that the other the agency also made this internal relocation finding um where which would undermine her cat claim although they made it in the context of asylum and withholding it does also undermine the the cat claim because she didn't show that she would be unable to just avoid him by relocating he never pursued her outside of this village she testified he doesn't have a car as you mentioned she walked two hours to leave sonoma or the nearest place with the telephone and the police and he didn't follow her or there's no evidence that he has the motive or inclination to pursue her he just it seems like every time he ran into her he threatened her but he wasn't um pursuing her outside of her denial we have some case law that suggests that if the bia doesn't look at the country report at all and i'm not sure that's what we have here that theoretically it could be remanded but we respect the harmless error in the event that we conclude that the government should have i mean that i should have said more about the country report well in that event um we would argue that this would be harmless error because as i mentioned just a second ago she didn't point to anything specific in the country report that could meet her burden of proof so for asylum and withholding removal it was denied based on the lack of motive of the persecutor and that's just simply not covered in the country report there's nothing about her or her persecutor and then for convention against torture it's too general it doesn't show that she individually faces that particularized risk of or likelihood it has to be the likelihood of being tortured with government acquiescence it's kind of a mixed bag of good and bad okay so thank you thank you counsel so now mr baker and mr price how are you going to use your last few seconds well i would just say again the attempted rape more than once the various death threats of these buck to 15 does constitute past persecution and the indigenous poor indigenous woman is the one central reason why he was preying upon her again because she was indigenous and he was indigenous yes in in that they're held in essentially contempt there are no there are no values to the government they're not going to be protected and that is her testimony um on a micro level and then the country reports on a on a macro level says the same thing essentially how they're discriminated against um and you need to it's a um effect of the evidence you have to take into consideration her testimony about her particular village and also compare that to the country conditions i'm not sure that bia did that but again um the the predator is not going to specify articulate the reasons why he's preying upon someone that's not how evil works he just does it because he knows he can get away with it and and and where where where is testimony in the record that he did it because he knew he could get away with it just her testimony about the police not being there how indigenous people i understand that but where did she say he did this because i was an indigenous woman and he doing her best testifying in court she doesn't know about these things she just knows she was preyed upon she knows she's in danger she knows this guy's gonna kill her if they go back and that's why she's begging the court for some protection but she doesn't know about asylum and pad and with police she never heard of those things okay um council your time is up let me ask my colleague does either have additional questions for the petitioner or his counsel or his counsel very well thanks to all counsel in this case the case just argued alonso versus par is submitted all right thank you goodbye thank you thank you
judges: M. Smith, Owens, Cardone